**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |  | |
|---|---|---|---|
| RONALD PROCTOR, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | C.A. No. 05-133-JJF | |
| | ) | | |
| STANLEY TAYLOR, | ) | | |
| THOMAS CARROLL, DAVID PIERCE, | ) | | |
| THOMAS SEACORD, | ) | | |
| FRANCIS KROMKA, and | ) | | |
| BRIAN ENGREM | ) | | |
| | ) | | |
| Defendants. | ) | | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT**

**I.    Introduction**

Plaintiff alleges imminent danger and filed this suit under the imminent exception, pursuant to 28 U.S.C. § 1915(g). Plaintiff has filed numerous lawsuits in the past, at least six of which the Court has found to be frivolous. Because he has filed more than three frivolous lawsuits, Plaintiff is ineligible to request *in forma pauperis* status.[1] Currently, Plaintiff may only proceed *in forma pauperis* if he claims he is in imminent danger of serious physical injury.

In this case, Plaintiff appears to allege an Eighth Amendment violation by Defendants for failure to protect him from two other inmates.

Defendants refer to matters outside the pleadings; therefore the Court may treat its motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Camp v.*

---

[1] *See Proctor v. Scott*, Civil Action No. 88-415-MMS (*dismissed* December 12, 1988*); Proctor v. Watson,* Civil Action No. 88-417-MMS (*dismissed* December 12, 1988); *Proctor v. Haley*, Civil Action No. 88-418-MMS (*dismissed* December 12, 1988); *Proctor v. Avanzato*, Civil Action No. 88-420-MMS (*dismissed* December 12, 1988); *Proctor v. Gaddis*, Civil Action No. 88-421-MMS (*dismissed* December 12, 1988); and *Proctor v. Brasure*, Civil Action No. 01-013-JJF (*dismissed* January 8, 2001).

*Brennan*, 219 F.3d 279, 280 (3rd. Cir. 2000) (consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment). Defendants Stanley Taylor, Thomas Carroll, David Pierce, Thomas Seacord, Francis Kromka, and Brian Engrem contend that they are entitled to judgment as a matter of law because there are no genuine issues of material fact in dispute. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"). Defendants assert that Plaintiff has not made, and cannot make a sufficient showing of the essential elements of his case for which he carries the burden of proof. Therefore, dismissal is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addition, Defendants state, that unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.     Statement of Facts

Plaintiff Ronald Proctor is an inmate currently housed at the Sussex Community Correctional Center ("SCCC") in Georgetown, Delaware. He left the Delaware Correctional Center ("DCC") on February 17, 2006. He will be released from the custody of the Department of Correction at the latest on August 16, 2006.

This Complaint stems from Plaintiff's claim that there are "No Contact" orders from a court, that require inmates Robert Ashley and Wayne Thomas to have no contact with Plaintiff. Plaintiff does not provide any information regarding the genesis of the alleged orders.

Plaintiff focuses the claims in his Complaint on inmates Robert Ashley and Wayne Thomas. Robert Ashley is serving a life sentence. Wayne Thomas does not complete his Level

5 sentence until May 21, 2007, at which time he will begin serving a level 4 Home Confinement sentence. (*See* Affidavit of Kevin Fletcher, attached as Exhibit "A"). As of February 17, 2006, Plaintiff is not in the same institution as Ashley or Thomas, and will not be in the same institution as either inmate for the remainder of his incarceration.

While at the DCC, during much of the relevant time period covered by Plaintiff's Complaint, Plaintiff was housed in the Security Housing Unit ("SHU"), as were Wayne Thomas and Robert Ashley. (*See* housing record attached as Exhibit "B"). Inmates housed in the SHU have no physical contact with each other. This is the only housing area within DCC where inmates do not interact on any level. Inmates are housed in single cells, and are handcuffed and escorted by correction officers one at a time, when outside their cells. (*See* Affidavit of Deputy Warden Pierce, attached as Exhibit "C").

Plaintiff claims that there exist "No Contact" orders imposed by the Court to keep Robert Ashley and Wayne Thomas away from him. A search of Robert Ashley's records and sentencing orders failed to uncover any "No Contact" orders regarding Plaintiff, in any Court. (*See* Affidavit of Records Supervisor, Cindy Wright, attached as Exhibit "D"). Plaintiff provides no evidence or specific information about the genesis of a "No Contact" order with Robert Ashley in his Complaint.

A search of Wayne Thomas's records shows that in Superior Court case number 9604014614, the Honorable Richard S. Gebelein ordered "No contact with any of the victims," who were not named in the order.[2] (*See* sentencing order, attached as Exhibit "E", p.7). The order stems from a 1995 altercation between Plaintiff and Thomas, when both were housed at the Howard R.Young Correctional Institution ("HRYCI").

---

[2] The sentencing order actually encompasses sentences for a total of four criminal cases; 9510020980; 9510017699; 9604014614; 9508017724.

In his Complaint, Plaintiff alleges that he was assaulted numerous times by Ashley and Thomas. However, a search of the records of Incident Reports and Disciplinary Reports of Plaintiff, Ashley and Thomas reveal that there are no incidents involving Plaintiff and Thomas or Ashley. (*See* Affidavit of Michael Little, attached as Exhibit "F").

Plaintiff filed this Complaint on February 28, 2005. Plaintiff filed a Petition for a Writ of Mandamus ("Petition") in the Superior Court in New Castle County on April 11, 2005, making the identical claims, and asking the Superior Court to enforce "No Contact" orders. (*See* Plaintiff's Superior Court Petition attached to his Complaint).

On January 18, 2006, the Honorable Calvin L. Scott, Jr. granted Defendants' Motion to Dismiss. (*See* Order, attached as Exhibit "G"). Subsequently, Plaintiff appealed the Superior Court decision to the Delaware Supreme Court on February 8, 2006. Defendants filed a Motion to Dismiss on February 27, 2006, pursuant to Supreme Court Rule 30(d), stating that Petitioner's appeal was moot, due to his move to the Central Violation of Probation Center on February 17, 2006. A ruling by the Court on the Motion to Dismiss is currently pending.

## ARUGMENT

I. **DEFENDANTS ARE ENTITLED TO DISMISSAL BECAUSE THE PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiff's claim must fail because there are no circumstances under which he can meet his burden of proving that Defendants violated the Eighth Amendment by failing to protect him. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may, upon a party's motion, dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, the court must accept as true all factual allegations contained in the complaint as well as all reasonable inferences that may be drawn

from those allegations, and view them in the light most favorable to the nonmoving party. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.*

Though *pro se* pleadings are entitled to leniency, such pleadings must still place a defendant on notice as to what wrong he has supposedly committed. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985) ("[I]f a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed."). *See also Solis v. Breslin*, 107 Fed.Appx. 262, 264 (2d Cir. 2004)(quoting *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514 (2002)(affirming the District Court's dismissal of a *pro se* inmate's complaint because he had "not alleged the occurrence of any specific acts" which gave the defendants "fair notice" of what his claim was and "the grounds upon which they rest."). "Plaintiffs suing governmental officials in their individual capacities, . . . must allege specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Id.*

Without a coherent statement of the claim, Defendants are not on notice of the specific acts that Plaintiff alleges are a constitutional violation. Relief cannot be granted when Plaintiff provides no proof of any injury, and he is no longer at DCC where the alleged threat existed.

In the instant case, Plaintiff makes nothing more that conclusory allegations regarding "assaults" on him by inmates Thomas and Ashley, with no evidence to support his claims. Further, Plaintiff provides no evidence of any "No Contact" orders that call for keeping Ashley away from him. Nor does Plaintiff provide any evidence or specific information about the

genesis of a "No Contact" order with Robert Ashley in his Complaint. The "No Contact" order referenced in Exhibit E, was found by searching Wayne Thomas's files. Plaintiff provided no information about the circumstances surrounding this order, or a time frame when the order was issued. Assuming *arguendo* that this order even includes Plaintiff as one of the victims, Plaintiff, even without the specific order in hand, could have provided information about the circumstances surrounding the need for this "No Contact" order. In addition, Plaintiff makes other allegations but fails to show in any manner how the allegations are connected to a "No Contact" order, or a violation of the order. (Complaint, Ex. A, p. 3). Finally, he provides no information about when any of the alleged incidents occurred, other than a vague, three year time span.

      Although facts must be read in a light favorable to the non-moving party when considering a motion to dismiss or for summary judgment, there is no requirement to accept as true factual allegations that are vague and chimerical and thus cannot be proved. Even a *pro se* litigant is expected to make a cogent statement of claims and legal arguments. In this case, Plaintiff's incoherent, vague, amorphous claims regarding a non-existent order, along with allegations about assaults for which there is no record, during a time span of several years, does not state a claim for which relief can be granted under any form of pleading leniency.

**II.　DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENEDMENT RIGHTS.**

      There is no "No Contact" order to keep Robert Ashley away from Plaintiff. As to Wayne Thomas, due to the housing rules in the SHU, Plaintiff and Thomas could have no physical contact, even when housed in the same building. (Ex. C). In addition, Plaintiff and Thomas were not in the same building much of the time that Plaintiff was in the SHU.

      It appears that Plaintiff is claiming an Eighth Amendment violation for failure to protect

him against other inmates, specifically, Ashley and Thomas. However, naming the two inmates is as specific as Plaintiff's Complaint gets. In order to prevail in his Section 1983 claim, Plaintiff must demonstrate that the prison officials, acting under the color of state law, deprived him of a constitutional right. *See* 42 *U.S.C.* § 1983. During the relevant time period, Defendants were employed by the State of Delaware. Defendants contend that they did not violate Plaintiff's constitutional rights under the Eight Amendment by subjecting him to cruel and unusual punishment by failing to protect him.

Plaintiff does not indicate which Defendants failed to protect him or provide any evidence of how they failed to protect him. (*See* Complaint). While prison officials do have a duty to protect inmates from violence by other inmates, Plaintiff fails to demonstrate how Defendants failed to perform that duty. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

Plaintiff fails to meet both the subjective and objective standard required to establish a viable Eighth Amendment claim. To prevail in an Eighth Amendment claim alleging a failure to protect, the plaintiff must demonstrate that:

> [T]he alleged deprivation must be objectively "sufficiently serious." Thus, where the alleged violations can be described as a failure to prevent harm, the inmate must show that his or her conditions of incarceration posed a "substantial risk of serious harm." Second, the prison official's state of mind must be one of "deliberate indifference" to the inmate's health or safety.

*Carrigan v. Delaware*, 957 F. Supp. 1376, 1381 (D. Del. 1997)(citing *Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). As stated above, Plaintiff provides not a scintilla of evidence regarding when and under what circumstances the alleged orders were written. He provides no evidence of how Defendants failed to abide by the alleged "No Contact" orders, thus causing a serious deprivation of his constitutional rights. Nor does Plaintiff provide any evidence that meets the objective threshold of a "substantial risk of serious harm." Plaintiff

does not provide any evidence that there was a substantial risk of serious physical harm to him from either inmate.

Plaintiff fails to provide any evidence or coherent, specific information about any serious harm that he suffered due to contact with Ashley or Thomas. He makes vague, amorphous allegations about injuries he suffered due to the "documented incident." (Complaint, Statement of Claim, p. 2). However, there is no record of any contact between Plaintiff and Ashley or Thomas. (Ex. F). If there had been physical altercations involving Plaintiff and these inmates, in the normal course of business incident reports would have been written, and disciplinary reports generated from the subsequent disciplinary actions. The fact that there is no record of any incidents between Plaintiff and Ashley or Thomas is evidence that no incidents ever occurred. (Ex. F). Further, Plaintiff fails to allege any facts to prove any physical injuries he claims to have suffered.

In addition to his failure to meet the objective threshold component of "substantial risk of serious harm," Plaintiff fails to demonstrate the subjective component of deliberate indifference on the part of the prison officials. *Farmer*, 511 U.S. at 837.

In *Farmer*, the Supreme Court enunciated the elements required to show deliberate indifference by the prison officials. Plaintiff must show that the prison official "knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Defendants must have "*actual knowledge of a substantial risk of serious harm.*" *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). That a prison official has actual knowledge of a substantial risk can be show through "inference from circumstantial evidence…and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Plaintiff offers no evidence to show that any of the defendants had actual

knowledge of any risk to him. The inference that may be drawn from the lack of any documentation of any contact between Plaintiff and Ashley or Thomas is that there was no contact. Plaintiff cannot demonstrate that Defendants had actual knowledge because the "No Contact" order with Ashley simply does not exist, and the order regarding "victims" in the case of Wayne Thomas, does not name the victims. Therefore, Defendants could not possibly have had knowledge of any substantial risk of serious harm.

No only does Plaintiff fail to show either actual knowledge of a substantial risk of serious harm, he fails to draw the inference that that the risk was disregarded. Knowledge can be inferred where the risk is obvious. *Farmer*, 511 U.S. at 843. However, "it is not enough that that the official '**should have known**' of a substantial risk or that a reasonable officer in the situation would have known of the risk." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). (Emphasis added).

Defendants contend that there was no risk to Plaintiff. Due to the SHU housing unit rules, the inmates Plaintiff claims were to be kept away from him were never allowed to have any physical contact with him. There is no record of incidents involving any physical contact between Plaintiff and Ashley or Thomas. Plaintiff's vague allegations do not support a claim of deliberate indifference to a substantial risk of harm contemplated in the Eighth Amendment.

### III. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY SPECIFIC FACT DEMONSTRATING PERSONAL INVOLVEMENT BY THE DEFENDANTS IN THE CONSTITUTIONAL VIOLATIONS RAISED IN THE PLAINTIFF'S COMPLAINT.

Plaintiff has alleged, yet failed to demonstrate that any of the defendants were personally involved in any of the allegations contained in the complaint. In actions brought pursuant to 42 *U.S.C.* § 1983, an individual cannot be held liable in the absence of personal involvement or knowing acquiescence of the alleged deprivation. *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d

Cir. 1981), *cert. denied,* 458 U.S. 1121 (1982). "[T]he officials' misconduct **cannot be merely a failure to act.** Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Id.* (Emphasis added). Without identifying **how** they participated in, personally directed, or acquiesced in the events which Plaintiff claims deprived him of constitutional rights, Defendants cannot be held liable and dismissal is appropriate. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).[3] Plaintiff's Complaint contains only conclusory allegations devoid of supporting fact.

## IV. THE DEFENDANTS ARE IMMUNE IN THEIR OFFICIAL CAPACITIES.

Plaintiff's Complaint (D.I. 2) names Defendants in their official capacities. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). "The Eleventh Amendment limits federal judicial power to

---

[3] Additionally, because Plaintiff's Complaint fails to allege any facts that demonstrate personal and individualized action or inaction by the Defendants, it is impossible for the Defendant to formulate any meaningful answer to Plaintiff's allegations. This failure to allege "specific facts" which provide "fair notice" to the Defendants requires dismissal of the complaint. *See Supra Solis,* 107 Fed.Appx. 262; *Oliver* 276 F.3d 736.

entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed*.*" *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can abrogate a state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)*.* No such clear intent can be seen in 42 *U.S.C*. §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C*. §1983. Neither the State of Delaware, nor agencies or officials of the State of Delaware are "persons" as contemplated by 42 *U.S.C.* § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks jurisdiction over the Defendants in their official capacities, and Defendants are outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Accordingly, the Defendants are entitled to summary judgment regarding any official capacity claims.

**V.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects officials from the personal cost of litigation and the attendant

inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988).

The Supreme Court has announced unequivocally that the District Court, at the earliest possible stage of litigation, must consider the defense of qualified immunity under a legal standard separate and apart from its analysis of the underlying claim itself. These two analyses are not susceptible to fusion, and cannot be left for factual resolution by the trier of fact. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first question before the Court in a qualified immunity analysis is whether, taken in the light most favorable to the party asserting injury, the facts show that the prison officials' conduct violated a constitutional right. *Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004)(citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For the reasons set forth above, Plaintiff has failed to provide any evidentiary support to any of his alleged constitutional violations. In addition, Plaintiff's claims also suffer from several legal defects as set forth above. Plaintiff fails to make out a constitutional violation.

The next stage of the qualified immunity analysis requires the Court to ask whether the constitutional right allegedly violated was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable prison official that his conduct was unlawful in the situation he confronted." *Id* at 202. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must ask whether a reasonable public official would know his or her *specific conduct* violated clearly established rights. *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). "The 'salient question' is whether the state of the law at the time of the

challenged conduct gave defendants 'fair warning' that their action was unconstitutional. *Black Hawk v. Pennsylvania*, 225 F.Supp.2d 465, 480 (M.D. Pa. 2002)(*quoting Hope v. Pelzer*, 536 U.S. 730,741 (2002)(articulating the "clearly established" inquiry to require that an official have 'fair warning' that the alleged activity engaged in was unconstitutional)).

Plaintiff's claims are based on heretofore unrecognized legal rights based on chimerical guarantee of protection. Nothing in the record supports a finding that any of the defendants ever engaged in any conduct which violated Plaintiff's rights. Additionally, Plaintiff's vague statements in his letters to prison officials fail to allege how any Defendant's *specific conduct* violated his clearly established rights. Assuming *arguendo* Plaintiff's ability to support any violation of any constitutional right, there is no legal authority which would provide the Defendants with "fair warning" that their alleged activities were unconstitutional. Accordingly, the Defendants are entitled to the defense of qualified immunity and summary judgment in their favor.

### CONCLUSION

For the foregoing reasons, Defendants Taylor, Thomas, Kromka, Engram, Pierce and Seacord respectfully requests that this Honorable Court enter an order dismissing Plaintiff's claims against them, with prejudice.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Lisa Barchi
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barchi@state.de.us

                                                        Attorney for Defendants

DATE: March 15, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2006, I electronically filed *Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss* with the Clerk of Court using CM/ECF.  I hereby certify that on March 15, 2006, I have mailed by United States Postal Service, the document to the following non-registered participant:

Ronald Proctor
SBI # 163750
Sussex Community Correctional Center
23207 DuPont Blvd.
Georgetown, DE 19947

/s/ Lisa Barchi
Lisa Barchi  # 3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
lisa.barchi@state.de.us