# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD PROCTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-133-JJF |
| | ) | |
| STANLEY TAYLOR, | ) | |
| THOMAS CARROLL, DAVID PIERCE, | ) | JURY TRIAL REQUESTED |
| THOMAS SEACORD, | ) | |
| FRANCIS KROMKA, and | ) | |
| BRIAN ENGREM | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

*/s/ Stacey Xarhoulakos*
Stacey Xarhoulakos (#4667)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
*Attorney for Defendants*

Dated:  April 9, 2007

## <u>TABLE OF CONTENTS</u>

Table of Citations ………………………………………………………….    ii

Nature and Stage of the Proceedings …………………………………………    1

Summary of the Argument ……………………………………………….....    3

Statement of the Facts ………………………………………………………...    5

Argument ……………………………………………………………………...    8

    I.     Captain Segars Was Never Served With the Complaint and the    9
         Claims Against Him Should Be Dismissed.

    II.    Proctor Cannot Maintain His Action Because He Failed to    9
         Pursue Any Administrative Remedy Prior to Asserting His
         Failure to Protect Claim in Federal Court.

    III.   Proctor Cannot Support His Claims Against Defendants    11
         Taylor, Carroll, Kromka, Engrem, and Pierce Because They
         Had No Personal Involvement In The Allegations Contained in
         Plaintiff's Complaint.

    IV.   Defendants Did Not Fail To Protect Proctor.    15

    V.    Plaintiff Has Not Suffered Any Physical Injury From The    19
         Alleged Incidents.

    VI.   Defendants Are Immnue From Liability For Plaintiff's Claims.    20

Conclusion    23

## TABLE OF CITATIONS

*Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998)…………………………    10

*Allah v. Al-Hafeex*, 226 F.3d 247, 250 (3d Cir. 2000)………………………………    19

*Anderson v. Greighton*, 483 U.S. 635, 640 (1987)…………………………………    22

*Anderson v Liberty*, 477 U.S. 242, 248 (1986)………………………………………...    8

*Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd* 531 U.S. 956 (2000).    9

*Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005)……………………..    11,13

*Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999)……………….....    8

*Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986)……………………………….    8

*Dickens v. Taylor*, 2006 WL 31903444, at *5 (D. Del. Nov. 3, 2006)…………......    15

*Doe v. Cates*, 499 A.2d 1175 (Del. 1985)……………………………………………..    20

*Farmer v. Brennan*, 511 US. 825, 833-34 (1994)……………………………………..    15

*Freeman v. Snyder*, 2001 WL 515258, at *4 (D. Del.)…………………………….....    9

*Hafer v. Melo*, 502 U.S. 21 (1991)……………………………………………………    21

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)……………………………………...    22

*McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)…………………………………....    10

*Nyhuis v. Reno*, 204 F.3d 64, 67 (3d Cir. 2000)……………………………………...    9,10

*Ostrander v. Horn*, 145 F.Supp.2d 614, 619 (M.D. Pa. 2001)……………………....    19

*Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981)…………………………    11

*Polk County v. Dodson*, 454 U.S. 312, 325 (1981)…………………………………...    13

*Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985)…………………………………....    11

*Rode v. Dellarciprete*, 845 F.2d 192, 197 (3d Cir. 1999)…………………………....    11,13

*Seminole Tribe of Florida V. Florida*, 517 U.S. 44 (1996)……………………….    21

*Vick v. Haller*, 512 A.2d 44 (1996)……………………………………………… 22

*Waples v. Kearney*, 2005 WL 724175, at *4 (D. Del.)………………………... 19

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)………………… 21

**Statutes, Rules, and Other Authority**

10 *Del. C.* § 4001……………………………………………………........ 20

28 *U.S.C.* § 1915(g)………………...………………………………….... 1

42 *U.S.C.* § 1983……………………………………………………… *Passim*

42 *U.S.C.* § 1997e(a)………………………………………………………... 9,10

42 *U.S.C.* § 1997e(e)………………………………………………………... 19

Delaware Constitutional Article I……………………………...………………… 20

Federal Rule of Civil Procedure 4(m)……………………………………………… 9

Federal Rule of Civil Procedure 56(c)……………………………………………… 8

Delaware Supreme Court Rule 30(d)……………………………………………………….. 5

## NATURE AND STAGE OF THE PROCEEDNGS

Plaintiff Ronald Proctor ("Plaintiff" or "Proctor") is an inmate currently housed at the Delaware Correctional Center ("DCC") in Smyrna, Delaware.  At the time of the filing of his Complaint, he was also housed at DCC.  He left DCC on February 17, 2006 and entered the Sussex Community Correctional Center.  He was released from the custody of the Department of Correction on December 28, 2006.  He re-entered the custody of the Department of Correction on January 12, 2007.  His next release date from the custody of the Department of Correction is, at the latest, December 30, 2008.

On February 28, 2005, Plaintiff filed a Complaint and motion to proceed *in forma pauperis* pursuant to 42 *U.S.C.* § 1983 against Defendants Stan Taylor, Brian Engrem, Thomas Carroll, David Pierce, Thomas Seacord, Frank Kromka, and Clyde Segars ("Defendants") alleging the defendants violated his constitutional rights by failing to protect him from inmates Robert Ashley and Wayne Thomas.  (D.I. 1, 2). ("Complaint")

On April 13, 2005, the Court granted Plaintiff's motion to proceed *in forma pauperis* based on the imminent danger exception of 28 *U.S.C.* § 1915(g).  (D.I. 3).

Waiver of service returns were executed by Stan Taylor, Brian Engrem, Thomas Carroll, David Pierce, Thomas Seacord and Frank Kromka between January 26, 2006 and February 10, 2006.  (D.I. 9-15).  Captain Clyde Segars was never served with a copy of the Complaint.  It is also noted that Defendants were served with a different copy of the Complaint than the copy that was filed with the Court.  Defendants were served with a copy marked "amended" and re-dated August 24, 2005 on the first page, but this amended Complaint was never docketed or filed with the Court nor was a motion to

amend ever filed with the Court.  Defendants have attached a copy of the complaint that they were served with as Exhibit "A."

On March 15, 2006, Defendants filed a Motion to Dismiss/Summary Judgment.  (D.I. 19).  On June 22, 2006, the Court denied the Motion to Dismiss/Summary Judgment.  (D.I. 21).

A scheduling order was entered by the Court on June 27, 2006 (D.I. 22) and amended pursuant to agreement of the parties on February 7, 2007.  (D.I. 42).

This is the Defendants renewed Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

I.     The Federal Rules of Civil Procedure require service on a defendant within 120 days of the filing of the Complaint.  Captain Segars was never served with a copy of the Complaint.  Proctor cannot maintain an action against him and summary judgment in favor of Captain Segars should be granted.

II.     Federal law requires a prisoner who files an action with respect to prison condition to fully exhaust administrative remedies before filing an action in federal court pursuant to 42 *U.S.C.* § 1983.  Plaintiff has not filed any administrative grievances on his allegations of failure to protect and summary judgment should be granted in favor of all Defendants.

III.     A plaintiff filing a lawsuit pursuant to 42 *U.S.C.* § 1983 is required to show that the defendants had personal involvement in the alleged wrongs.  Plaintiff has not alleged or established any personal involvement by defendants Taylor, Carroll, Kromka, Engrem, or Pierce.  Plaintiff cannot maintain an action against these defendants and summary judgment should be granted in their favor.

IV.     Plaintiff cannot establish that he was either incarcerated under conditions posing a substantial risk of harm to him or that Defendants knew of and disregarded an excessive risk of harm to Plaintiff.  Thus Plaintiff cannot maintain an action for failure to protect and summary judgment is appropriate.

V.    Plaintiff must have suffered some physical injury for his claims to be actionable. Plaintiff has not established that he suffered any injury at all and he can not withstand summary judgment.


VI.    Defendants are immune from liability in their official and individual capacities. Thus summary judgment in favor of defendants is appropriate.

## STATEMENT OF FACTS

This Complaint stems from Plaintiff's claim that there are "No Contact" orders from a court requiring that inmates Robert Ashley and Wayne Thomas have no contact with Plaintiff. Plaintiff has not identified the alleged orders. Plaintiff has not filed, let alone exhausted, any administrative grievances related to his allegations of failure to protect. (Exhibit "B" – McCreanor Affidavit).

Plaintiff filed a Petition for a Writ of Mandamus ("Petition") in the Superior Court in New Castle County on April 11, 2005, making identical claims, and asking the Superior Court to enforce "No Contact" orders. (Exhibit "A" – Copy of Complaint served on Defendants, Exhibit A-1).

On January 18, 2006, the Honorable Calvin L. Scott, Jr. granted Defendants' Motion to Dismiss. (Exhibit "C"). Subsequently, Plaintiff appealed the Superior Court decision to the Delaware Supreme Court on February 8, 2006. Defendants filed a Motion to Dismiss on February 27, 2006, pursuant to Supreme Court Rule 30(d), stating that Petitioner's appeal was moot, due to his move to the Central Violation of Probation Center on February 17, 2006. The Court granted the Motion to Dismiss on April 4, 2006. (Exhibit "D").

Plaintiff focuses the claims in his Complaint on inmates Robert Ashley and Wayne Thomas. Robert Ashley is serving a life sentence. Wayne Thomas does not complete his Level 5 sentence until May 21, 2007, at which time he will begin serving a level 4 Home Confinement sentence. (Exhibit "E" – Fletecher Affidavit).

While at DCC, during much of the relevant time period covered by Plaintiff's Complaint, Plaintiff was housed in the Security Housing Unit ("SHU"), as

were Wayne Thomas and Robert Ashley.  Inmates housed in the SHU have no physical contact with each other.  This is the only housing area within DCC where inmates do not interact on any level.  Inmates are housed in single cells, and are handcuffed and escorted by correction officers one at a time, when outside their cells.  (Exhibit "F" – Pierce Affidavit).

Plaintiff claims that there are "No Contact" orders imposed by the Court to keep Robert Ashley and Wayne Thomas away from him.  Because Proctor did not identify such orders, Defendants conducted their own search to determine if such orders exist.  A search of Robert Ashley's records and sentencing orders failed to uncover any "No Contact" orders regarding Plaintiff, in any Court.  (Exhibit "G" – Records Supervisor, Cindy Wright, Affidavit).  Plaintiff has been unable to identify the "No Contact" order.

A search of Wayne Thomas's records did not disclose any court order that specifically ordered no contact and named Thomas and Proctor.  As best as Defendants can determine, there does exist a Superior Court criminal case against Thomas (9604014614) where the Honorable Richard S. Gebelein ordered "No contact with any of the victims."  The victims, however, were not named in the order.[1]  (Exhibit "H" – Sentencing Order, p. 7). The order stems from a 1995 altercation between Plaintiff and Thomas, when both were housed at the Howard R.Young Correctional Institution ("HRYCI").

---

[1] The sentencing order actually encompasses sentences for a total of four criminal cases: 9510020980, 9510017699, 9604014614, 9508017724.

Proctor alleges that "Defendants have become aware of and failed to act or prevent incidents of assault against [his] person". (*See* Complaint, at fourth page).[2]  His Complaint, however, fails to establish specific dates for the alleged assaults.  Further, Plaintiff includes dates in his Complaint that occur after the time of filing.[3]  The closest Plaintiff comes to clarifying a date for these alleged assaults is on the second to last page of the Complaint. Under #3, Plaintiff indicates that he is alleging a total of 25 incidents since September 7, 2004.  (*See* Complaint at second to last page).  However, a search of the records of Incident Reports and Disciplinary Reports of Plaintiff, Ashley, and Thomas reveal that there are no incidents involving Plaintiff and Thomas or Ashley. (Exhibit "K" – Little Affidavit).

Proctor has not filed any administrative grievances on his failure to protect claims.  Defendants searched prison grievance records for grievances filed by Proctor alleging failure to protect or naming Robert Ashley or Wayne Thomas.  Two grievances were uncovered that named Wayne Thomas.  (Exhibits "I","J").  These grievances, however, are not relevant to the failure to protect allegations in the Complaint.  (*See* Exhibit "B" – McCreanor Affidavit).  Moreover, the grievances are dated March 2 and March 11 of 2005.  Both of these dates occur after February 28, 2005, the date of the filing of the Complaint.  (D.I. 2).

## ARGUMENT

_____

[2] The pages of the Complaint are not numbered.
[3] The Complaint was filed in February of 2005, but Plaintiff refers to September of 2005 in his Complaint.

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

I.        **Captain Clyde Segars Was Never Served With the Complaint And The Claims Against Him Should be Dismissed.**

8

Federal Rule of Civil Procedure 4(m) requires service of the summons and complaint on the defendant within 120 days after the filing of the complaint. As of this date, Capt. Segars has not been served with the Complaint and the claims against him should be dismissed.

II.      **Proctor Cannot Maintain His Action Because He Failed to Pursue Any Administrative Remedy Prior to Asserting His Failure to Protect Claim in Federal Court.**

Congress requires a prisoner to exhaust administrative remedies before filing a § 1983 action with respect to prison conditions. This requirement is codified in 42 *U.S.C.* § 1997e(a). Prison conditions are defined to include the physical environment in which a prisoner lives and the service provide to him. *Booth v. Churner*, 206 F.3d 289, 291 (3d. Cir. 2000), *aff'd*, 531 U.S. 956, (2000). There is no futility exception to exhaustion and prisoners must exhaust administrative remedies even where the process would not provide them with the remedy they are seeking. *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000); *Booth v. Churner*, 206 F.3d 289, 294-295 (3d. Cir. 2000), *aff'd*, 531 U.S. 956, (2000). A prisoner's allegation of failure to protect from another inmate is a challenge to prison conditions under the Prisoner Litigation Reform Act ("PLRA"). *Freeman v. Snyder*, 2001 WL 515258, at *4 (D. Del. 2001)(Exhibit "M").

Proctor has not filed any grievances pertaining to the allegations in his Complaint. (Exhibit "B" – McCreanor Affidavit). A search of grievances filed by Proctor during the relevant time period did not disclose any grievances filed by Proctor relevant to the failure to protect allegations in his Complaint. Defendants uncovered two grievances which include the name Wayne Thomas. Both, however, were filed after the date of filing of the Complaint. The first, attached hereto as Exhibit "I", includes the

9

name Wayne Thomas and allegations against him in the Description of the Complaint. The grievance, however, was filed based on allegations against Sergeant Thomas, requesting an internal investigation into alleged behaviors of Sgt. Thomas. The grievance does not mention a "No Contact" order nor does it indicate that Proctor informed anyone about a "No Contact" order. The second, attached hereto as Exhibit "J" also contains the name Wayne Thomas, but again, other than the mention of Thomas, the grievance has no bearing on the allegations in Proctor's Complaint.

Proctor has made no effort to exhaust or even pursue administrative grievances. Congress enacted 1997e(a) in part because of the very nature of prisoner litigation as "untidy, repetitious, and redolent of legal language" and to eliminate "courts conducting case-by-case inquires until after a prisoner has presented his claims to a particular administrative remedy program, which often helps focus and clarify the issues for the court." *Nyhuis*, 204 F.3d at 74 (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998). Further rationale for the statute is that it provides an agency with an "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id*. (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

Proctor pursues his unsupported and unsubstantiated allegations against Defendants with this Court without any attempt to present his claim for an administrative remedy. Proctor's failure to file any grievances has deprived defendants of the opportunity to remedy any alleged wrong. Proctor is barred from pursuing his action and summary judgment should be granted to defendants because Proctor has not pursued the administrative grievance process and exhausted his administrative remedies.

**III.**      **Proctor Cannot Support His Claims Against Defendants Taylor, Carroll, Kromka, Engrem, and Pierce Because They Had No Personal Involvement In The Allegations Contained In Plaintiff's Complaint.**

To establish a civil rights claim under 42 *U.S.C.* § 1983 a plaintiff must prove that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the plaintiff was deprived of a right or privilege secured by the Constitution or the laws of the United States. *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985). To support a claim for a civil rights violation a plaintiff must show that the defendant had *personal involvement* in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis added). A plaintiff must prove that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981). In addition, this Court has held that, "Grievances are not enough to impute knowledge to [a] defendant." *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)).

State Defendants Taylor, Carroll, Kromka, Engrem, and Pierce had no personal involvement in the alleged failure to protect Proctor. Therefore Proctor cannot maintain an action against these Defendants under § 1983 and summary judgment is appropriate.

**A.**      **Commissioner Taylor, Warden Carroll, and Deputy Warden Pierce cannot be held liable based solely on their supervisory responsibilities.**

11

Stan Taylor was the Commissioner of the Department of Corrections during the relevant time periods in Proctor's Complaint. Proctor's Complaint contains no allegations against Commissioner Taylor other than to name him in the caption. (*See* Complaint). Proctor has never had a conversation with Commissioner Taylor. (Exhibit "L" – Proctor Dep. 30:7-9). He alleges he sent Commissioner Taylor "letters in regards to incidents that occurred and notification through his subordinates," but he has been unable to identify such letters. (Exhibit "L" – Proctor Dep. 30:10-22). Proctor admits that he has named Commissioner Taylor as a defendant on the sole basis of respondeat superior because of his position as Commissioner of DOC and because "he is in charge of other persons under him. (Exhibit "L" - Proctor Dep. 30-32). Proctor admits that he had no reason to believe that Commissioner Taylor had any personal knowledge of these incidents. (Exhibit "L" – Proctor Dep. 67:2-4).

Thomas Carroll was the warden of DCC during the relevant time period in the complaint. Proctor's Complaint contains no allegations against Warden Carroll. (*See* Complaint). Proctor alleges Warden Carroll had personal knowledge of the allegations in the Complaint because of letters he sent, but the only letter he was able to identify was a letter attached to his Complaint as Exhibit A. This letter was addressed to a person named Rispolli *via* E. Burris, and not to Warden Carroll. (Exhibit "L" – Proctor Dep. 67-68). Proctor is unable to identify any reason, other that respondeat superior, for naming Warden Carroll as a defendant in this action. (Exhibit "L" – Proctor Dep. 32:14-23).

David Pierce was the deputy warden at DCC during the relevant time periods in Proctor's Complaint. Other than naming Warden Pierce in the caption of the case, Proctor's Complaint does not make any allegations against him. (*See* Complaint).

12

When initially asked to identify why Deputy Warden Pierce was named, Proctor was unable to do so. (Exhibit "L" – Proctor Dep. 60:1-4). After being provided a copy of his Complaint,[4] Proctor stated that Deputy Warden Pierce had "direct notification and/or through grievance filings since he's the head of the unit. He was unable, however, to identify what the direct notification was. (Exhibit "L" – Proctor Dep. 73:3-14).

It is well established that section 1983 will not support a claim based on the theory of *respondeat superior* or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Further, grievance letters to Commissioner Taylor, Warden Carroll, or Deputy Warden Pierce, even if Proctor could identify them, "are not enough to impute knowledge to [them]." *Brookins*, 402 F.Supp.2d at 512 (quoting *Rode*, 845 F.2d at 1208).

It is clear that Commissioner Taylor, Warden Carroll, and Deputy Warden Pierce had no personal involvement in the alleged failure to protect and were named solely because of their supervisory responsibility. Proctor cannot prove that Commissioner Taylor, Warden Carroll, or Deputy Warden Pierce played an affirmative role in the alleged deprivation of his rights and the claims against them should be dismissed.

**B.**     **Frank Kromka and Brian Engrem cannot be held liable because Proctor has not alleged or established any basis for liability.**

---

[4] It is noted that Proctor was provided a copy of the Complaint that he served on Defendants as that was the Complaint in possession of the Defendants. As discussed in the Nature and Stage of the Proceedings, Plaintiff filed a different Complaint with the Court and this was not discovered until counsel sat down to write this motion. The Complaints appear to be substantively the same, but the Complaint served on Defendants contains the addition of Exhibit A-1. The Complaint served on defendants is attached hereto as Exhibit "A".

13

Frank Kromka was a correctional corporal at DCC during the relevant time periods in Proctor's Complaint. Plaintiff's Complaint does not identify any basis for naming Cpl. Kromka as a defendant in this action. (*See* Complaint). When asked why Cpl. Kromka was named as a defendant, Proctor was unable to articulate any reason. (Exhibit "L" – Proctor. Dep. 34:12-15, 68:23-24, 69:1-2).

Brian Engrem was a paralegal at DCC during the relevant time periods in Proctor's Complaint. When initially asked what Brian Engrem did to violate his rights, Proctor was unable to articulate an answer. (Exhibit "L" – Proctor Dep. 59:14-20). After he was given a copy of his Complaint, he was again asked what Brian Engrem did to violate his rights. Proctor then alleged that Engrem prevented him from filing grievances by not returning affidavits to him that Proctor had sent him to be copied. He then went on to admit that affidavits were not required for him to submit grievances and that he filed the grievances anyway. (Exhibit "L" – Proctor Dep. 69-71). Even if Proctor could establish that Engrem withheld affidavits from him, this does not rise to the level of personal involvement in a constitutional failure to protect claim. Particularly because Proctor testified he submitted his grievances without the affidavits anyway.

Cpl. Kromka and Brian Engrem clearly had no personal involvement in the allegations in Proctor's Complaint. There is no causal link established, or even alleged, between any conduct of Cpl. Kromka or Brian Engrem and the allegations of failure to protect as contained in the Complaint. Proctor cannot prove that Cpl. Kromka or Brian Engrem played an affirmative role in the alleged deprivation of his rights and the claims against them should be dismissed.

IV.        **Defendants Did Not Fail To Protect Proctor.**

14

"To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element)." *Dickens v. Taylor*, 2006 WL 3190344, at *5 (D. Del. November 3, 2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994)) (attached hereto as Exhibit "N". Deliberate indifference is a state of mind equivalent to a reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 834.

Plaintiff alleges in his Complaint that Defendants failed to protect him from inmates Wayne Thomas and Robert Ashley. He alleges the existence of "No Contact" orders with both inmates. Proctor's failure to protect claim fails for several reasons.

### A.      Defendants did not fail to protect Proctor from Robert Ashley.

Proctor was not incarcerated under conditions that posed a substantial risk of serious harm from Robert Ashley. There is no evidence of a "No Contact" order between Ronald Proctor and Robert Ashley. Proctor has been unable to identify the alleged "No Contact" order(s) other than to state that they are a "matter of public record" and "contained within the inmate's file." (Exhibit "L" – Proctor Dep. 36-37). Defendants have conducted a search of records and have been unable to find a no contact order between Ashley and Proctor. (Exhibit "G" – Records Supervisor, Cindy Wright, Affidavit).

Even assuming *arguendo* that there was a "No Contact" order, Defendants did not disregard a substantial risk of harm to Proctor. Proctor has been unable to

15

identify any time that he has come in contact with Ashley or been harmed by Ashley. In his Complaint, Plaintiff alleges "incidents of assault against [his] person. (See Complaint at Statement of Claim, p. 2). He alleges there have been 25 such incidents since September 7, 2004. (Complaint, at last page). If there had been any incidents of physical altercations between Proctor and Ashley, the incidents would have been documented by correctional staff in the normal course of business in incident reports or disciplinary reports. A search of the records of Incident Reports and Disciplinary Reports of Plaintiff and Ashley, for the relevant time periods, reveals that there are no incidents involving Plaintiff and Ashley. (Exhibit "K" – Little Affidavit).    Further, due to housing rules within SHU, Proctor and Ashley could not have had physical contact even when housed in the same building. (Exhibit "F" – Pierce Affidavit).

When asked when this alleged contact occurred, Proctor stated it was when he and Ashley were transported together for a dental visit. (Exhibit "L" – Proctor Proctor Dep. 47). Proctor then stated that nothing happened during the transport because "we never got transported because I disclosed to the officers that I refused to go based on my no-contact order with this inmate. (Exhibit "L" – Proctor Dep. 47-48). Thus the only contact Proctor alleges occurred between him and Ashley, never actually occurred.

Defendants could not have failed to protect Proctor from Ashley when there is no evidence of a "No Contact" order between Proctor and Ashley. Nor is there any evidence suggesting the two ever came in contact or that Proctor was injured by Ashley as a result of such contact. Proctor's claim of failure to protect him from Robert Ashley should be dismissed.

### B.    Defendants did not fail to protect Proctor from Wayne Thomas.

Proctor was not incarcerated under conditions that posed a substantial risk of serious harm from Wayne Thomas. Proctor has not identified the "No contact" order he alleges exists between him and Thomas. Defendants conducted a search of Wayne Thomas's records and discovered a Superior Court case stemming from a 1995 altercation between Proctor and Thomas. In the sentencing order, the Court ordered no contact with any of the victims, but it does not name any of the victims. (Exhibit "H" – Sentencing Order). For purposes of this motion and because Proctor has not identified the "No Contact" order to which he is referring, Defendants make their arguments based on this sentencing order as that is the only evidence of such an order.

First, Proctor cannot establish actual knowledge of a substantial risk. The sentencing order did not list what persons Thomas was not to have contact with. And, as previously discussed, Proctor never filed any grievances related to these allegations that may have informed defendants of the situation, put them on notice, and given them an opportunity to remedy the alleged risk. Thus defendants can not be imputed with actual knowledge of any risk to Proctor.

Second, Proctor has not provided any evidence that meets the objective threshold of a substantial risk of harm. Due to housing rules within SHU, Proctor and Thomas could have no physical contact even when housed in the same building. (Exhibit "F" – Pierce Affidavit). There is no risk that they will harm each other because they do not come into contact with one another. In his Complaint, Plaintiff alleges numerous incident of assault, but provides no further details. Specific dates are not given either, but on the last page of his Complaint, Plaintiff alleges the incidents occurred a total of 25

times since September 7, 2004. When asked in his deposition to clarify what contact there was between him and Thomas, Proctor stated "he slings urine and "fetus" up through your food flap into your cell". (Exhibit "L" – Proctor Dep. 50:10-11). Even assuming *arguendo* that this was feasible,[5] a search of the records of Incident Reports and Disciplinary Reports of Plaintiff and Thomas reveal that there are no incidents involving Plaintiff and Thomas. (Exhibit "K" – Little Affidavit). And even if this type of incident could somehow go unnoticed by correctional officers who are delivering food through the slots, Proctor did not file a grievance to bring it to anyone's attention so that they may attempt to remedy the situation.

Third, Defendants did not know of and disregard an excessive risk to Proctor's safety. As previously discussed, prison officials were never given an opportunity to correct what Proctor may have perceived as the failure to protect him. Proctor stated that he told Lt. Seacord on September 7, 2005 that he was not to be placed in a cell next to Wayne Thomas. (Exhibit "L" – Proctor Dep. 33-34, 68). This date, however, occurs well after the February 28, 2005 filing of the Complaint and months after Plaintiff was moved to a different building than Wayne Thomas. (Exhibit "F" – Pierce Affidavit). Other than these statements by Proctor, of notice to Lt. Seacord after the filing of his Complaint, there is not any evidence that Proctor ever informed any of the defendants of these alleged incidents.

Defendants could not have disregard and excessive risk of harm to Proctor when he was housed in a unit with Thomas where inmates do not have contact with each other. Further, Defendants were never put on notice of any alleged incidents between

---

[5] Defendants would argue that it is not given the dimensions of the food slots and the fact that they are only opened briefly to slide the food tray in and take it out.

Proctor and Thomas through incident reports, disciplinary write-ups or grievances by Proctor.

      The facts of this case clearly reveal that Defendants did not fail to protect Proctor.  Therefore, summary judgment in favor of all Defendants is appropriate.

**V.**          **Proctor Has Not Suffered Any Physical Injury from the Alleged Incident(s).**

      Section 1983, as a tort statute, requires an injury to be actionable.   Under § 1983, damages are available for actions found to be in violation of constitutional rights and to have caused compensable injury.  *Allah v. Al-Hafeex*, 226 F.3d 247, 250 (3d. Cir. 2000). A limitation on prisoner recovery is established in 42 *U.S.C.* 1997e(e).  The statute provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Thus to have an actionable claim for compensatory damages on the basis of mental or emotional injury, a prisoner must first establish some physical injury.  Further, where a plaintiff's claims have no basis in law or fact, he should be barred from the recovery of damages entirely.  *Waples v. Kearney*, 2005 WL 724175, at 4 (D.Del. 2005) (citing *Ostrander v. Horn*, 145 F.Supp.2d 614, 619 (M.D. Pa. 2001)).

      Proctor has not established that he suffered any injury at all, other than to say he has suffered "mental anguish."  When asked what physical injuries he has incurred he was unable to identify any injury.   (Exhibit "L" – Proctor Dep. 84-86).  Nor does his Complaint allege any physical injury.

      Proctor's Complaint does not specify what form of damages he is seeking. To the extent, however, that he seeks compensatory damages, his damages claim should

be dismissed for failure to allege any physical injury. Further, because Proctor's claims do not have an arguable basis in law or fact, Proctor should be barred from recovering damages entirely, compensatory or otherwise.

**VI.**        **Defendants Are Immune From Liability For Plaintiff's Claims.**

Plaintiff seeks to hold Defendants liable in their official, as well as their individual capacities. Defendants, however, are immune from such claims.

> **A.**    **Defendants are immune from liability in the official capacities pursuant to the Doctrine of Sovereign Immunity and the Eleventh Amendment.**

To the extent that Proctor seeks to hold the Defendants liable in their official capacities for the alleged torts and/or constitutional violations, the Doctrine of Sovereign Immunity bars such claims. *See* Del. Const. Art. I., Sec 9; *Doe v. Cates*, 499 A.2d 1175 (Del. 1985). The Defendants in this case clearly acted without gross or wanton negligence. Moreover their actions arose out of, and in connection with the performance of official discretionary duties – that is, the housing assignment of inmates. 10 *Del. C.* § 4001. Thus the Defendants are immune from Proctor's tort and constitutional claims.

Further, to the extent Plaintiff's Complaint names the Defendants in their official capacities, Defendants are immune from liability under the Eleventh Amendment. The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress's intent to waive

the state's immunity will produce this result. *Id.* No such clear intent can be found in 42 *U.S.C.* § 1983. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 *U.S.C.* § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks jurisdiction over the Defendants in their official capacities, and the Defendants are outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Therefore summary judgment is appropriate.

**B.    Defendants are immune from liability in their individual capacities pursuant to the doctrine of qualified immunity.**

Plaintiff also cannot maintain an action against the Defendants in their individual capacities pursuant to the doctrine of qualified immunity. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary

duties.  *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

In this case, the Defendants did not have any notice of any risk of harm to Proctor nor is there any evidence that they acted with gross or wanton negligence. Housing assignments are a normal and regular part of the discretionary duties of Defendants.  Given the facts as available, Defendants executed that discretionary duty in good faith and not in violation of Proctor's rights.

Given that the Defendants are immune from liability in their official and individual capacities, Plaintiff cannot maintain this action and the Motion for Summary Judgment should be granted.

**CONCLUSION**

Plaintiff's claims against Taylor, Carroll, Pierce, Kromka and Engrem must be dismissed because, Proctor can not establish any actionable basis under § 1983 for liability against them.  Proctor's claims against Segars must be dismissed because he was never served with the Complaint.  The claims against all Defendants should be dismissed because Proctor can not establish how Defendants failed to protect him, that he

suffered any injury from the alleged failure to protect, or that he exhausted or even attempted to pursue an administrative remedy for his failure to protect claims. Summary judgment in favor of Defendants Taylor, Carroll, Pierce, Kromka, Engrem, Segars, and Seacord should be granted.

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2007, I electronically filed *Defendants' Opening Brief In Support of The Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on April 9, 2007, I have mailed by United States Postal Service, the document to the following non-registered party:  Ronald Proctor.

/s/ Stacey Xarhoulakos
Stacey Xarhoulakos, (I.D. 4667)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
stacey.xarhoulakos@state.de.us
*Attorney for Defendants*