# EXHIBIT M



Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Freeman v. SnyderD.Del.,2001.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Jerome FREEMAN, Plaintiff,
v.
Robert SNYDER, et al., Defendants.
**No. Civ.A. 98-636-GMS.**

April 10, 2001.

John S. Grady, of Grady & Hampton, Dover, Delaware, for Plaintiff.
Rosemary K. Killian of the State of Delaware Department of Justice, Wilmington, Delaware, for Defendants.

*OPINION*
SLEET, J.

I. INTRODUCTION.

*1 In November, 1998, Jerome Freeman ("Freeman") filed this prisoner civil rights action against Robert Snyder, the warden of the Delaware Correctional Center ("DCC"), as well as a number of other prison guards and correctional officers (collectively, "the defendants"). In his complaint, Freeman alleges that numerous officials and employees at the "DCC" violated his constitutional right to be free from cruel and unusual punishment by housing him in a cell with a mentally unstable inmate named James Hodges. See 42 U.S.C. § 1983 (1994). According to Freeman, although he repeatedly asked numerous prison guards to move him to a different cell, all of his requests went unanswered. As a direct result, Freeman contends, he was eventually stabbed in the left eye, leaving him permanently blinded in that eye. Freeman now seeks injunctive and monetary relief.

Presently before the court is the defendants' motion to dismiss for Freeman's alleged failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). Because the defendants have not shown that there was an actual administrative remedy available for Freeman to exhaust, the court will deny the defendants' motion. The following sections explain the reasons for the court's denial of the defendants' motion more thoroughly.

II. STANDARD OF REVIEW

Although the defendants filed a motion to dismiss, they have attached an extensive appendix containing materials outside of the pleadings to their submission. In opposition to this motion, Freeman has also submitted an appendix containing materials outside of the pleadings. For these reasons, the court will treat the pending motion to dismiss as one for summary judgment. See Fed. Civ. P. 12(b) (1999) (noting that a Rule 12(b)(6) motion can be converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers); *See also Camp v. Brennan,* 219 F.3d 279, 280 (3d. Cir.2000) (stating that consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment); *Neal v. Kelly,* 963 F.2d 453, 455-56 (D.C.Cir.1992) (emphasizing that the plaintiff must receive the opportunity to submit its own affidavits or other materials in opposition to the motion before it is converted into one for summary judgment) (citing *Lewis v. Faulkner,* 689 F.2d 100, 101 (7th Cir.1982)).

The court can grant summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. *See, e.g., Abraham v. Raso,* 183 F .3d 279, 287 (3d Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-51 (1986)); *Lloyd v. Jefferson,* 53

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

F.Supp.2d 643, 654 (D.Del.1999) (citing same). A fact is "material" if it bears on an essential element of the plaintiff's claim. *See, e.g., Abraham,* 183 F.3d at 287; *Lloyd,* 53 F.Supp.2d at 654. In deciding a motion for summary judgment, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party. *See, e.g., Pacitti v.. Macy's,* 193 F.3d 766, 772 (3d Cir.1999).

### III. BACKGROUND

#### A. Procedural History

*2 Freeman filed his complaint in state court on July 27, 1998. Prior to an answer being filed, Freeman filed an amended complaint. On November 12, 1998, the defendants removed the suit to federal court. The defendants filed an Answer to the Amended Complaint on December 11, 1998. The defendants did not allege failure to exhaust as an affirmative defense in their Answer.

On May 3, 1999, Freeman moved to amend his complaint to add certain defendants in their official capacity. The court granted Freeman's motion to amend on May 6, 1999. The defendants neither opposed this motion, nor did they amend their answer to include new affirmative defenses. The case proceeded through discovery, including depositions of all of the defendants and the plaintiff. On March 29, 2000, the court denied the defendants' motion for summary judgment. *See Freeman v. Snyder,* No. 98-636-GMS, 2000 WL 1728278, at *1 (D.Del. Mar. 29, 2000). The court denied the motion because there are genuine issues of material fact that prevent it from ruling as a matter of law that the defendants were not aware that Hodges posed a significant risk to Freeman's health or safety. *Id.* In that same opinion, the court also gave Freeman leave to amend his complaint to add a claim for injunctive relief. As a result, Freeman moved to amend his complaint on April 13, 2000.

On May 3, 2000, the defendants opposed Freeman's motion to amend based on Freeman's alleged failure to exhaust administrative remedies as mandated by the PLRA. This was the first time they raised this issue. After the defendants unsuccessfully attempted to appeal the court's summary judgment decision, Freeman reiterated his motion to amend in late September of 2000. On October 2, 2000, the court reopened discovery on the question of Freeman's exhaustion of administrative remedies. The court granted Freeman's motion to amend on October 17, 2000. The defendants answered the amended complaint on October 23, 2000, and raised the issue of PLRA exhaustion as an affirmative defense for the first time in this Answer.

#### B. Relevant Facts

The court will focus on Freeman's conduct in exhausting his administrative remedies because the court has already described the facts giving rise to this lawsuit in detail in its March 29, 2000 opinion. *See Freeman v. Snyder,* 2000 WL 1728278, at *1-3.

According to the defendants, Freeman failed to avail himself of the DCC's administrative remedies before and after he was assaulted by Hodges on May 4, 1998 ("the assault"). Before the assault, the defendants claim that Freeman was required to formally complain about his cell mate on a written grievance form or request that he be moved in a written request for reclassification. The defendants describe the grievance procedure at the DCC as follows:

[It has] established an Inmate Grievance Procedure whereby every inmate ... will be provided a timely and effective means of having problems brought to the attention of those who can offer administrative remedies before court proceedings can be filed. DOC Policy 4.4] With certain exception, DOC Policy 4.4, part V provides for a three-tier system of review of inmate grievances. Initially, after a written grievance is submitted to the inmate grievance chair ("IGC"), investigation into the matter will be initiated and informal resolution attempted. If informal resolution is unsuccessful, the resident grievance committee ("RGC") will convene and a hearing will be held, culminating in a recommendation which is forwarded to the warden

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

or his designee ("Warden"). If the warden and the grievant concur with the RGC recommendation, the IGC closes the file and monitors issues of compliance. If the parties do not concur, the matter is referred to the bureau grievance officer ("BGO"), who reviews the file. If the BGO concurs with the warden's decision and the Bureau Chief of Prisons accepts the BGO's recommendation, the IGC closes the file and monitors compliance. Alternatively, the BGO can attempt mediation between the grievant and the warden or recommend Outside Review of the matter.

*3 D.I. 163, at 6 (citing *Proton v. Phelps,* C.A. No. 99-103 (May 23, 2000) (J. Robinson) (unpublished)).

Furthermore, the defendants contend that information about the grievance and classification system were readily available to Freeman in 1998. According to the defendants, information related to grievance procedures was available to Freeman in " his inmate manual, postings in the library through the counselors, and made unavoidably obvious through the election of inmate representatives and the marked grievance collection boxes on each tier." D.I. 163 at 15. In addition, the defendants maintain that Freeman had to know about grievance procedures because he had availed himself of those procedures in the past. [FN1] Finally, the defendants also point to a March 28, 1998, review of Freeman's placement in protective custody to demonstrate that Freeman had an opportunity to officially make a grievance. They allege that although Freeman was present at this review, he did not communicate any information about Hodges to his reviewers.

> FN1. The defendants have offered evidence showing that on several occasions dating back to 1983, Freeman had used the classification system to complain about his classification status.

After the assault, the defendants claim that Freeman was required to timely grieve his complaints about allegedly dangerous administrative practices and make his demand for money damages through the grievance system and to appeal any adverse decisions he received before filing in court. Instead of filing a timely grievance, they allege that Freeman immediately contacted an attorney and then waited ten weeks to file this suit. In support of their argument that Freeman did not attempt to file a grievance after the assault, they aver that Grievance Officer, Doreen Williams ("Williams"), claims she had no recollection of speaking with or meeting Freeman in 1998. Moreover, Williams states that she would have encouraged Freeman to file a grievance even though "transfers, discipline, program placement, parole and job placement requests" would have been redirected because they were not technically grievable concerns. Finally, the defendants maintain that Freeman's attempted use of the grievance system in August, 2000, was untimely.

In his opposition papers, Freeman alleges a very different set of facts regarding his efforts to avail himself of the grievance system at the DCC. Mr. Freeman was placed in a cell with James Hodges in January of 1998. Between January and May of 1998, Freeman alleges that he repeatedly requested that he be moved to a different cell.

Freeman also argues that his request to change cells was not a grievable issue. To support this claim, Freeman alleges that no one ever suggested to him that his problem might be resolved by filing a grievance. Rather, he maintains that he was told by Lt. Pawlowski to write a letter to Captain Cunningham, which he claims he did.[FN2] Thus, Freeman contends that he was led to believe by prison officials that the only way of resolving his problem with Mr. Hodges was by contacting correctional officials.[FN3]

> FN2. In the court's March 29, 2000 opinion denying the defendants' motion for summary judgment, the court describes Freeman's efforts to have his cell changed in detail. *See Freeman v. Snyder,* 2000 WL 1728278, at *1-3.

> FN3. The defendants argue that Freeman incorrectly assumed that DCC correctional officers were responsible for placing him in the cell with Hodges. Rather, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

defendants assert that the function of the building staff is merely "ministerial" because the staff only carries out the directives of the classification committee regarding placement of inmates. The defendants further state that it is the classification committee that views an inmates file upon initial classification and at regular intervals. This assertion contradicts the statements of correctional officer, Captain Cunningham. *See Freeman v. Snyder,* 2000 WL 1728278, at *1. From Cunningham's statements, there is a strong inference that it was Cunningham who decides which individuals are placed in which cell. *Id.* Specifically, Cunningham "testified that, prior to *making his assignments,* he does not receive any information concerning the mental or physical history of the inmate." *Id.* (emphasis added). Thus, despite the defendants' contention that it was not correctional officers who were responsible for cell placement, the testimony of their own witnesses appears to controvert this claim.

Freeman also points to several statements by DCC's own employees that support his claim that his request was not grievable. Specifically, Freeman offers a letter from Correctional Officer Lise Merson ("Merson") in which Merson states that a grievance requesting a transfer of an inmate " wouldn't be a grievance at all," and that issue " cannot be grieved." In her deposition, Merson also acknowledged that "you can't grieve where you live. " Merson explained that an inmate cannot grieve where he lives because this is a security issue, and hence, not a grievable concern. Freeman also points to the deposition testimony of Correctional Officer Williams, who was the Grievance Officer in 1998. In her deposition, Williams also admitted that a request to change cells would not be considered a proper grievance, and would not be considered in the grievance process.

*4 After the assault, Freeman maintains that he was unable to comply with the seven day period for filing a grievance due to the severity of his injuries.

Freeman was placed in the infirmary for twelve days after the assault. During this time period he was given Tylenol-III and Motrin for pain, as well as Keflex and Prednisone to prevent against infection and inflammation. Thus, Freeman alleges he was unable to file a timely grievance. Freeman offers statements of Williams to establish that any grievance filed would have been rejected. In her deposition, Williams states that any grievance filed by Freeman seeking money damages would have been rejected. Finally, Williams also states that if Freeman had attempted to file a grievance on May 15th, when, after getting out of the infirmary, his grievance would have been rejected as untimely.

With this procedural and factual background in mind, the court will now address the substance of the defendants' motion.

### IV. DISCUSSION

The defendants argue that they are entitled to summary judgment because Freeman failed to exhaust administrative remedies that were available to him as required by the PLRA. In contrast, Freeman contends that there was no actual administrative remedy available to him, and therefore, he was not required to file a grievance under the PLRA before filing this suit.[FN4]

> FN4. Freeman also opposes the defendants' motion on several other grounds. Freeman claims that the defendants are not entitled to summary judgment because 1) they have waived the right to assert failure to exhaust as an affirmative defense because they waited for too long to raise the issue, 2) the "due process clause entitles [him] to access to the court to remedy his alleged violation of the Eighth Amendment," and 3) the " seven-day limitation period to file a grievance constitutes a violation of [his] right to access to the courts." D.I. 166, at 7. The court will not rule on these issues because it finds that there was no administrative remedy available to Freeman, or in the alternative, that he

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d       Page 5
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

substantially complied with the DCC's administrative scheme.

Under the PLRA, a prisoner must exhaust all available remedies before bringing an action regarding prison conditions. *See Booth v.. Churner,* 206 F.3d 289, 291 (3d Cir.2000) *petition for cert. filed,* 68 U.S.L.W. 3774 (U.S. June 5, 2000); *Nyhuis v. Reno,* 204 F.3d 65, 67 (3d Cir.2000). The PLRA provides that"
"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a) (amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71 (1996)).

In the Third Circuit, a prisoner's claim alleging a failure to protect from attack by a fellow inmate is a challenge to prison conditions. *See Booth,* 206 F.3d at 291 (holding that an excessive force claim is a challenge to prison conditions for purposes of the PLRA). *See also Hanson v. Chesney,* 37 F.Supp. 399, 401-02 (E.D.Pa.1999) (holding that failure to protect from attack by a fellow prisoner is a challenge to prison conditions under the PLRA). *But see Nussle v. Willette,* 224 F.3d 95, 100 (2d Cir.2000) (holding that "[i]n light of the text, structure, and legislative history of the PLRA," Section 1997e(a) does not encompass particular instances of excessive force or assault).

The Third Circuit has also refused to recognize a futility exception to the PLRA requirement that a prisoner exhaust administrative remedies. *See Nyhuis v. Reno,* 204 F3d. at 71. *But see Whitley v. Hunt,* 158 F.3d 882, 886-7 (5th Cir.1998); *Lunsford v. Jamao-As,* 155 F.3d 1178 (9th Cir.1998); *Garrett v.. Hawk,* 127 F.3d 1263, 1266 (10th Cir.1997) (all holding that Section 1997e(a) does not require exhaustion when the administrative process does not award money damages, and hence, would be futile). In other words, the PLRA requires an inmate to exhaust all administrative remedies prior to bringing a federal action challenging prison conditions, whether or not they provide the inmate with the relief the inmate says he or she desires in the federal action. *Nyhuis,* 204 F.3d at 71. In deciding whether a plaintiff exhausted administrative remedies the court should "not review the effectiveness of those remedies, but rather whether remedies were made available and exhausted." *Miller v. Tanner,* 196 F.3d 1190, 1193 (11th Cir.1999).

*5 In this case, however, Freeman is not alleging that the grievance procedures were futile in that they could not provide him with the relief he sought. Rather, Freeman argues that there was no grievance procedure available for him to exhaust.

As a threshold issue, the court recognizes that the 1996 amendments to the PLRA made exhaustion of remedies a mandatory requirement, rather than a discretionary one. *See Wendell v. Asher,* 162 F.3d 887, 890 (5th Cir.1998). Section 1997e(a) states that no action shall be brought until "such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Thus, although there is no futility exception to this mandatory requirement, the statute does recognize that in some instances a remedy is not available "[T]he language in the Prison Litigation Reform Act ("PLRA") which qualifies ' administrative remedies' with the phrase 'as are available,' has left room for the courts to decide that the administrative remedies available to a prison litigant are not adequate and cannot, therefore, be exhausted. *Harris v. Ford,* 32 F.Supp.2d 1109, 1110 (D.Ala.1999).

The Third Circuit has also recognized that the language of Section 1997e(a) implies that a prison litigant cannot be expected to exhaust administrative remedies that are not available. *See Camp v. Brennan,* 219 F.3d 279, 281 (3d Cir.2000); *Nyhuis,* 204 F.3d at 77-78. In *Camp v. Brennan,* 219 F.3d 279 (3d Cir.2000), a Third Circuit decision decided after *Booth* and *Nyhuis,* the court recognized that in instances where no administrative remedies are available, a prisoner would be relieved from meeting Section 1997e(a)'s requirements. *Id.* at 281. In *Nyhuis,* the court stated that "grievance procedures must be understandable to the prisoner, expeditious, and treated seriously." *Id.* at 77-78.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 6
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

The court went on to explain that compliance with an administrative remedy scheme will be satisfactory if it is *substantial. Id.* (citing *Miller v. Tanner,* 196 F.3d at 1194)) (emphasis added).

After reviewing the Third Circuit's decisions in *Camp* and *Nyhuis* and reviewing the record in a light most favorable to Freeman, as it must in deciding a summary judgment motion, the court holds that the defendants' charge that Freeman did not exhaust administrative remedies fails as a matter of law, and thus, the court will deny their motion for summary judgment. The court denies the defendants' motion for two separate reasons. First, the defendants have not demonstrated that there was an administrative remedy available at the DCC for Freeman to exhaust. Second, the court also holds that even assuming an administrative remedy was available, that Freeman's compliance with that scheme was substantial. The court will address these issues in turns.

A. Availability of Administrative Remedies

An inmate's failure to comply with the PLRA's exhaustion requirement constitutes an affirmative defense. *See e.g., Massey v.. Helman,* 196 F.3d 727, 735 (7th Cir.2000) (holding that it was an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure); *Jackson v. District of Columbia,* 89 F.Supp.2d 48, 57 (D.D.C.2000). *But see Brown v. Toombs,* 139 F.3d 1102 (6th Cir.1998), *cert. denied,* 525 U.S. 833 (1998) (holding that a prisoner plaintiff is required to allege and demonstrate exhaustion as a precondition to filing suit). Although the Third Circuit has not expressly ruled on this issue, the court follows the Seventh Circuit's decision in *Massey v. Helman.* Specifically, the court finds *Massey's* reliance on the Third Circuit's decision in *Williams v. Runyon,* 130 F.3d 568 (3d Cir.1997) to be persuasive. In the context of a Title VII case, *Williams v. Runyon* held that failure to exhaust administrative remedies is an affirmative defense. *Id.* at 573. *See also Jackson v. District of Columbia,* 89 F.Supp. 2s at 57-58 (" Given the similarity between Section 1997e(a) and affirmative defenses such as statute of limitations, and the infirmities of the *Toombs* decision, the court holds that Section 1997e(a) is an affirmative defense."). Therefore, the court holds that a prisoner's failure to exhaust administrative remedies before filing a claim constitutes an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure, rather than a precondition to suit.

*6 Because failure to exhaust administrative remedies is an affirmative defense, the defendants have the burden of pleading and proving the defense. *See Massey,* 196 F.3d at 735 (citing *Williams v. Runyon,* 130 F.3d at 573). [FN5] In this case, the court holds that the defendants have not met this burden because the evidence establishes that Freeman's claim was not grievable under the DCC's system, and thus, no remedy was available to Freeman. Also, the defendants' own statements and description of the putative grievance process fail to establish that there was an administrative remedy available for Freeman to exhaust.

FN5. Although the court does not rule on this issue, it notes that Freeman's argument that the defendants have waived this defense is very persuasive. A claim that a prisoner failed to exhaust administrative remedies can be waived like other affirmative defenses. *See Massey,* 196 F.3d at 735. Before raising the issue of exhaustion of remedies, the defendants waited until well after the close of discovery on the underlying claims, and until all of the court's scheduling deadlines had long passed in connection with motions for dismissal. Moreover, the defendants have simply failed to provide a reason for this delay considering that evidence regarding exhaustion has been available to the defendants since the day this lawsuit was filed in 1998. Lastly, the court observes that the defendants did not raise the exhaustion issue until it denied the defendants' motion for summary judgment.

The evidence submitted by the defendants themselves firmly establishes that Freeman's requests were not grievable, and, therefore, no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 7
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

administrative remedy was available for him to exhaust. *See McGrath v. Johnson,* 67 F.Supp.2d 499 (E.D.Pa.1999); *Mullins v. Smith,* 14 F.Supp.2d 1009, 1012 (E.D.Mich.1998). In a case similar to Freeman's, *McGrath v. Johnson,* 499, the court held that McGrath, a prisoner plaintiff, had sufficiently alleged that there was no avenue for him to pursue administrative remedies with respect to his claims. 67 F.Supp.2d at 511. Like Freeman, McGrath had adduced evidence which demonstrated that "being placed in Administrative Custody is not addressable through the grievance procedures." *Id.* at 510. Like Freeman, McGrath also pointed out that there was an exception under the prison's grievance system which would exempt issues concerning his claims from the grievance process. *Id.* at 511. In another case similar to Freeman's, *Mullins v. Smith,* a Michigan District Court held that because a prisoner plaintiff's claims were "non-grievable" under the prison's grievance system, there was no administrative remedy available for the plaintiff to exhaust. *Id.*

In this case, the defendants provided the court with a detailed description of the three-tiered grievance system in place at the DCC, however, other evidence in the record clearly establishes that Freeman's request would not have been grievable under that system. Although the defendants urge the court to focus on the grievance system, statements made by former and current Grievance Officers, Merson and Williams, clearly refute any suggestion that Freeman's requests were grievable and would have been subject to this process. Hence, the defendants' detailed description of the DCC's grievance system is not relevant to this motion.

Despite conceding that Freeman's requests would not have been grievable under the stated grievance procedures, the defendants still maintain that Freeman's request would have been somehow "redirected." D.I. 163, at 12. The main flaw of this contention is that the defendants fail to explain what happens to non-grievable, redirected claims.[FN6] In light of *McGrath* and *Mullins,* the defendants' own admissions that Freeman's requests were not grievable, and their contradictory depictions of the appropriate grievance procedures, the court concludes that the defendants have failed to establish that there was an administrative remedy available to Freeman.

> FN6. Also, at the same time that the defendants insist that Freeman's request should have been filed as a regular grievance so that it could be redirected, they also attempt to argue that Freeman should have complained to the classification committee about his desire to have his cell changed. The problem with this argument is that Freeman was not grieving his classification status, that is, his classification in Protective Custody. Instead, Freeman was requesting a cell change. The defendants contend that cell placement is determined by the classification committee, but this court noted in its March 29, 2000 opinion that there is evidence that Captain Cunningham, a correctional officer, determined which individual was placed in which cell. *See Freeman v. Snyder,* 2000 WL 1728278, at *1 (remarking that Cunningham testified that prior to making his assignments, he does not receive any information concerning the mental or physical history of the inmate).
> Likewise, the defendants' arguments that Freeman made grievances in the past are not relevant here because those requests deal with classification changes and not the type of problem Freeman had with Hodges. *See Pearson v. Vaughn,* 102 F.Supp.2d 282, 289 (E.D.Pa.2000) (finding that evidence that plaintiff had filed a similar grievance in the past was not relevant because the "plaintiff was never told that his claim was not grievable under the grievance process" during the prior request).

*7 Furthermore, in light of statements made to Freeman by the defendants' own witnesses, they cannot establish that there was an administrative remedy available to Freeman. In *Camp v. Brennan,* there were statements made on the record by corrections officers that indicated that "none of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

prisoners grievances would get to the Grievance Coordinator because the grievances were about the officers' co-workers." *Id.*, 219 F.3d at 280. The court held that this fact established that there were no administrative remedies available for the plaintiff within the meaning of the PLRA. *Id.* (reversing a district court's grant of a motion to dismiss for failure to comply with Section 1997e(a) exhaustion requirement). In holding that the plaintiff had sufficiently established that there was no administrative remedy available, the court noted that the prisoner's description of events, which the defendants did not refute, placed the prisoner in " something of a Catch-22 situation." *Id.* at 281.[FN7] In another case similar to Freeman's, *Pearson v. Vaughn,* 102 F.Supp.2d 282 (E.D.Pa.2000), the court held that when an inmate was told by corrections officers that his "grievance regarding his desire to be removed from the general population and placed in administrative custody was 'not addressable under the grievance process' defendants cannot assert in this lawsuit that plaintiff failed to exhaust this claim." *Id.* at 288 (citing *Miller v. Tanner,* 196 F.3d 1190, 1194 (11th Cir.1999)).

> FN7. As an independent basis for its ruling, the *Camp* court also stated that: " [b]ut even were that not the case, we are told by defendants themselves that Camp's allegations have been fully examined on the merits by the ultimate administrative authority and have been found wanting." *Id.* at 281.

Again, like the plaintiffs in *Camp and Pearson,* Freeman has shown that he was also in a "Catch-22 situation." There is clear evidence in the record of statements made by corrections officers that would indicate that he could not file a grievance, or that his request was not grievable. For example, Freeman stated that he was told that he could not file a grievance to have his cell changed. Freeman has also alleged that he was told by Lt. Ronald Pawlowski to write a letter to Captain Cunningham, in lieu of filing a grievance. Freeman has alleged that he did write a letter to Captain Cunningham.[FN8] As the court described in its March 29, 2000 summary judgment opinion, Correctional Officers Pawlowski, Lesma Jones, and Deborah Finney-Greene have admitted that Freeman made numerous requests to have his cell moved and that Freeman wrote notes attempting to have his cell changed. *See Freeman v. Snyder,* 2000 WL 1728278, at *3 Pawlowski admits to instructing Freeman to contact Cunningham. *Id.* Therefore, considering that correctional officers admit that they directed Freeman to contact Captain Cunningham, the defendants cannot now allege that Freeman failed to exhaust administrative remedies of which they could have easily informed him.

> FN8. Nothing was done in response to the letter Freeman wrote Captain Cunningham. Freeman also claims that he sent a written note through another corrections officer, Deborah Finney-Greene. She admits that she delivered this note to Lt. Seagers, who allegedly rejected it out of hand. *See Freeman v. Snyder,* 2000 WL 1728278, at *3

Finally, the court is also persuaded by the plaintiff's argument that the vague, informal process described by the defendants is "hardly a grievance procedure." In *Concepcion v. Morton,* 125 F.Supp.2d 111 (D.N.J.2000), the court held that an informal inmate complaint procedure established by a prison warden did not constitute an "administrative remedy" within the meaning of Section 1997e(a). *Id.* at 121. Whether there is an available administrative remedy is a question of law for the court to decide. *See id.* at 117 (citing *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999)).[FN9] In examining the legislative history of Section 1997e(a), the court in *Concepcion* found that the phrase "administrative remedy" is not commonly used to describe an individual administrator's decision to consider and respond to complaints or suggestions. *Id.* at 118. Instead, the *Concepcion* court found that Congress intended for the term "administrative remedy" to refer to an administrative scheme adopted by the state department of corrections. *Id.* at 119. Thus, considering that the DCC's own grievance officers have stated that Freeman's claim was not grievable, but rather that a request such as Freeman's would be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 9
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

redirected without further explanation, the court holds that in this instance there was no administrative remedy available for Freeman to exhaust.

> FN9. According to the Second Circuit, "[W]here a grievance procedure is informally established by the warden of a prison and therefore not ascertainable by examination of statutes or regulations, the existence of the procedure may be a matter of fact, but whether it qualifies as an administrative remedy that must be exhausted under Section 1997e(a) is a question of law." *Concepcion* at 117 (citing *Snider*, 199 F.3d at 114.)

### B. Substantial Compliance

*8 Even assuming that the defendants have established that there was an administrative remedy available for Freeman to exhaust, the court still finds that Freeman has substantially complied with this system and thus, he has satisfied the PLRA's exhaustion requirement. *See Pearson v. Vaughn, 102 F.Supp.2d at 288 (holding that a plaintiff who was told that his claims were not addressable under the grievance process substantially complied with the available remedies); Thomas v. Dragovich,* Civ A. No, 97-5814, 2000 WL 377770, at *1 (E.D.Pa. Mar. 28, 2000). *But See Ahmed v. Sromovski,* 103 F.Supp.2d 838, 843 (E.D.Pa.2000) (holding that an inmate who could not justify why he failed to complete steps two and three of a clearly defined administrative remedy). In *Nyhuis,* the court stated that "to serve these [the PLRA's] purposes, grievance procedures must be understandable to the prisoner, expeditious, and treated seriously." 204 F.3d at 77-78. The court went on to acknowledge that compliance with the administrative remedy scheme will be satisfactory if it is substantial. *Id.* (citing *Miller v. Tanner,* 196 F.3d 1190, 1194 (11th Cir.1999)). In light of the statements made to Freeman by correctional officers, his repeated efforts to have his cell changed, and the defendants' contradictory descriptions of the putative administrative remedy, the court holds that Freeman has substantially complied in the best way possible with procedures available to him at the DCC.

### V. CONCLUSION

For the foregoing reasons, the court concludes that the defendants have failed to meet their burden of establishing that there was an administrative remedy available for Freeman to exhaust within the meaning of the Prison Litigation Reform Act. Furthermore, even assuming that the defendants had established that there was an administrative remedy available to Freeman, the court holds that Freeman has substantially complied with the remedies provided to him by the defendants. Therefore, the court holds as a matter of law that Freeman has satisfied the Prison Litigation Reform Act's exhaustion requirement. For this reason, the defendants' motion will be denied. The court will issue an order to this effect in conjunction with this opinion.

D.Del.,2001.
Freeman v. Snyder
Not Reported in F.Supp.2d, 2001 WL 515258 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.