IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD E. PROCTOR, JR., | : |
| Plaintiff, | : |
| v. | : Civ. Action No. 05-133-JJF |
| LT. F. SEACORD, SGT. JOHN DOE, CAPT. C. SEGARS, DEP. WARDEN PEARCE, WARDEN T. CARROLL, COMM. OF CORR. S. TAYLOR, BRIAN ENGREM, AND CPT. F. KROMKA, | : |
| Defendants. | : |

Ronald E. Proctor, Jr., Pro se Plaintiff, Delaware Correctional Center, Smyrna, Delaware.

Stacey Xarhoulakos, Esquire, Deputy Attorney General, Delaware Department of Justice. Attorney for Defendants.

**MEMORANDUM OPINION**

January 17, 2008
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is Defendants' Motion For Summary Judgment. (D.I. 46.) For the reasons set forth below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff Ronald E. Proctor, Jr. ("Plaintiff"), an inmate at the Delaware Correctional Center ("DCC") filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that he was subjected to imminent danger and Defendants failed to protect him from harm when they ignored a "no contact" order between Plaintiff and inmates Robert Ashley and Wayne Thomas.[1]

Defendants filed a Motion For Summary Judgment and argue the Motion should be granted on the bases that: (1) Defendant Captain Segars ("Segars") was never served, (2) Plaintiff failed to exhaust his administrative remedies, (3) Defendants former Department of Correction ("DOC") Commissioner Stanley Taylor ("Commissioner Taylor"), former Warden Thomas Carroll ("Warden Carroll"), Captain F. Kromka ("Kromka"), Brian Engrem ("Engrem"),

---

[1]Plaintiff filed a Petition For A Writ Of Mandamus in The Superior Court of the State of Delaware in and for New Castle County with identical claims and seeking the relief of enforcement of "no contact" orders. (D.I. 47, Ex. C.) The Petition was dismissed, Plaintiff appealed its dismissal, and the appeal dismissed as moot due to Plaintiff's transfer in housing. (Id. at Ex. D.)

and Deputy Warden Pearce ("Pierce")[2] had no personal involvement in the alleged claim, (4) Defendants did not fail to protect Plaintiff, (5) Plaintiff suffered no physical injury from the alleged incidents, and (6) Defendants are immune from liability.

Plaintiff did not file a responsive brief despite two Court Orders setting response deadlines. (D.I. 48, 54.) July 13, 2007 was the last deadline imposed and the Order advised Plaintiff that if he failed to file a response, the Court would decide the Motion on the papers submitted. (D.I. 54.)

## II. RELEVANT FACTS

Plaintiff's Complaint was signed on February 10, 2005, and is filed stamped February 28, 2005. The Complaint alleges that Plaintiff was housed at the DCC, and that "since January 17, 2002 and most recent since September 7, 2005" Plaintiff has been subjected to imminent danger incidents in direct violation of Delaware Superior Court's no contact orders from inmate Robert Ashley and Wayne Thomas, both of whom have assaulted Plaintiff during these time periods.[3] (D.I. 2.) Attached to the Complaint is a copy of a letter from Plaintiff to "Rispolli via E. Burris"

---

[2]The correct spelling is Pierce and is the spelling that will be used in this Memorandum Opinion.

[3]On February 17, 2006, Plaintiff was transferred from DCC to the Central Violation of Probation Center near Smyrna, Delaware. (D.I. 47, Ex. E.) Plaintiff was released from the DOC on December 28, 2006, and re-entered the DOC on January 12, 2007. (D.I. 47, at 1.)

dated February 10, 2005, complaining that Plaintiff had been housed in the same unit as Thomas and Ashley. Plaintiff was moved, and on September 7, 2005,[4] Thomas was placed in the cell next to Plaintiff. The letter states that "Seacord was told that moment [a] no contact order prevented" Plaintiff's placement in the same building as Thomas and Ashley. The letter states that Plaintiff was subjected to numerous incidents of Thomas' direct threats, as well as urine and feces incidents.

Cindy Wright, the acting records supervisor at DCC, searched Ashley's institutional records but did not find a "no contact" order with regard to Plaintiff. In a Delaware Superior Court criminal case where Thomas is the defendant, an order provides that Thomas is to have "no contact with any of the victims" but the victims are not identified or named in the order. (D.I. 47, Ex. H.) Plaintiff testified during his deposition that the Superior Court of New Castle County, Delaware issued "no contact" orders for Plaintiff not to have any access to any incidents concerning Plaintiff or Thomas and Ashley. (D.I. 47, Ex. L, at 35.) Plaintiff testified that he had copies of the orders and described them as being derived from criminal proceedings against

---

[4]The dates are confusing. Plaintiff refers to September 7, 2005 (i.e., Thomas was placed in the cell next to him), as well as September 7, 2004 (i.e., a total of 25 incidents since September 7, 2004). Obviously, the September 7, 2005 date occurred after the time that Plaintiff filed his Complaint in February 2005.

-3-

Ashley and Thomas. (Id. at 36-37.) Plaintiff stated he was a victim in the Thomas case and a witness in the Ashley case (Id. at 37-38, 44.)

During the relevant time period, Plaintiff was housed in the Secure Housing Unit ("SHU"). According to Pierce, who supervises SHU, all SHU inmates are housed in single cells and do not interact with other inmates, there is no physical contact between inmates housed in SHU, and at no time could Plaintiff have had physical contact with either Thomas or Ashley (D.I. 47, Ex. F.) Plaintiff, Thomas, and Ashley were housed in separate, single cells. (Id.) Plaintiff and Thomas were at housed at SHU in the same building for approximately seven months, but on April 5, 2005, Plaintiff was moved to a different building. (Id.)

Pierce avers that there is no record that Plaintiff was ever assaulted by either Thomas or Ashley. (Id.) Michael Little, who supervises the law libraries, hearing and video court for the DCC, avers that he conducted a search of records and found no records of incidents involving Plaintiff, and either Ashley or Thomas between the dates of September 1, 2004 and April 1, 2005. (D.I. 47, Ex. K.) Additionally, he found no disciplinary reports between the same dates showing any physical contact among these inmates. (Id.)

Plaintiff submitted a grievance for an incident on March 2, 2005, to report that Thomas threw urine, feces, and food at his

food flap.[5] (D.I. 47, Ex. I.) Plaintiff submitted a second grievance for an incident on March 11, 2005, regarding correction officers' actions during a shakedown. (Id. at Ex. J.) The same grievance references Thomas, noting that Plaintiff implicated Thomas as having a metal object in his vent. (Id.)

Plaintiff testified during his deposition that he had no independent recollection of contact with Thomas. (D.I. 47, Ex. L at 46.) However, he testified that Thomas would sling or throw urine, feces, and food through the food flap/slot and into Plaintiff's cell through Plaintiff's food flap/slot. (Id. at 50.) Plaintiff testified this occurred approximately fifty times during an eight month period. (Id.) Plaintiff testified that the food slot is opened by a correction officer either prior to trial or prior to chow. (Id. at 51-52.) It is opened to either to place the tray inside and close the slot, or sometimes it is left open fifteen to twenty minutes while chow is being served. (Id. at 51-52.) Plaintiff recalled filing grievances, but could not recall specifics. (Id. at 53-54.)

Plaintiff recalled that he and Ashley were to be transported together for a dental visit, but the transport did not take place

---

[5]Plaintiff mainly complained that Sgt. Thomas punched Plaintiff in the chest and as a remedy requested an internal affairs investigation and the imposition of criminal charges against Sgt. Thomas.

-5-

after Plaintiff disclosed to the officer that he refused to go based upon the "no contact" order with Ashley. (Id. at 47-49.)

Plaintiff testified during his deposition that he named former Commissioner Taylor as a defendant based upon respondeat superior, because Taylor was the Commissioner of the DOC and in charge of every person under him. (D.I. 47, Ex. L at 29-32, 66-67.) Plaintiff has no reason to believe that former Commissioner Taylor had any personal knowledge of the alleged incidents. (Id. at 67.)

Plaintiff named former Warden Carroll as a defendant for the same reasons he named Taylor. (Id. at 32.) He testified that former Warden Carroll had personal knowledge or became aware of the incidents through a letter Plaintiff submitted on February 10, 2005 to Deputy Warden Elizabeth Burris ("Burris"). (Id. at 67.) The letter was address to Burris. (Id.)

Plaintiff testified that he named Seacord as a defendant because Plaintiff told Seacord on September 7, 2005, that Plaintiff should not be in a cell next to Thomas or be on the same tier as Thomas based upon a court order that stated Plaintiff should have no contact with Thomas. (Id. at 33, 68.) Plaintiff testified that Seacord violated his civil rights because he "failed to acknowledge and/or protect" him when he placed him in the cell next to Thomas. (Id.)

Plaintiff testified that he named Kromka as a defendant for "failure to protect and other various constitutional violations." (Id. at 34.) Plaintiff had no statement why Kromka would have had any knowledge of Plaintiff's allegations. (Id. at 69.) Plaintiff testified that he could not remember what actions Engrem or Pierce took to violate his civil rights. (Id. at 59-60.) Plaintiff testified that Engrem, who works in the law library, had knowledge of the incidents because Plaintiff submitted documents to Engrem for copying. (Id. at 70.) Plaintiff testified that Pierce had knowledge of the incidents through unidentified direct notification and/or through grievance filings since he is the head of SHU. (Id. at 73.)

Plaintiff testified that he was not currently injured from the incidents, but without reviewing the Complaint could not provide specifics of ever being injured, ever suffering any injury from the incidents, he could not recall if he was injured more than once, nor could he recall if he had any memory of what the injuries were. (Id. at 56-57.)

### III. STANDARD OF LAW

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The Court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which

it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Court will not grant the entry of summary judgment without considering the merits of Defendants' unopposed motion. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed."). Accordingly, the Court will review all the evidentiary materials Defendants submitted in support of summary judgment.

## IV. DISCUSSION

### A. Service Of Process

Defendants contend that the claims against Segars should be dismissed because he was never served with the Complaint. A review of the Court's docket indicates that the U.S. Marshal attempted to serve Segars on February 28, 2006. The USM-285 form was returned unexecuted because Segars retired and there was no forwarding information available. (D.I. 16.) The Court takes notice that Defendant John Doe was never identified and never served.

A defendant may file a motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure when a plaintiff fails to properly serve him or her with the summons and

complaint. Rule 4(m) of the Federal Rules of Civil Procedure states that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action." Fed. R. Civ. P. 4(m). The rule goes on the state that "[u]pon a showing of good cause for the failure to serve, the court must extend the time for service; [and] the court can, at it discretion, extend the time for service even if plaintiff has not shown good cause for the delay." Daniels v. Correctional Med. Services, 380 F. Supp. 2d 379, 384 (D. Del. 2005) (citing Fed. R. Civ. P. 4(m)); MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1098 (3d Cir. 1995).

The Complaint was filed on February 28, 2005, and the Court entered a service Order on August 22, 2005. (D.I. 2, 7.) Service was attempted, albeit unsuccessfully. (D.I. 16.) Plaintiff did not respond to Defendants' Motion and has not shown good cause for his failure to timely serve Segars. Therefore, the Court will grant Defendants' Motion and will dismiss the claims against Segars for failure to timely serve. The Court will also dismiss the claims against Defendant John Doe for failure to identify and to serve.

**B. Personal Involvement**

Defendants former Commissioner Taylor, former Warden Carroll, Kromka, Engrem, and Pierce move for summary judgment on the basis that they had no personal involvement in Plaintiff's alleged constitutional violations.

**1. Respondeat Superior**

Defendants argue that former Commissioner Taylor, former Warden Carroll, and Pierce had no personal involvement in the alleged failure to protect and were named solely because of their supervisory responsibility. Plaintiff testified that he named Taylor and Carroll as defendants based upon respondeat superior. Plaintiff did not identify any actions taken by Pierce that violated his constitutional rights. He made reference, however, to the fact that Pierce was the head of SHU.

Supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

The record before the Court does not support a finding that former Commissioner Taylor, former Warden Carroll, or Pierce were the "driving force [behind]" the alleged constitutional violations. Moreover, during his deposition, Plaintiff testified that he had no reason to believe that Taylor had any personal knowledge of the alleged incidents. Further, Plaintiff cannot rely on a letter he addressed and sent to someone other than Warden Carroll as evidence of Warden Carroll's personal knowledge of any alleged incidents. Finally, there is nothing in the record to support Plaintiff's position that Pierce had direct knowledge of the incidents. Plaintiff referred to an unidentified direct notification and/or through grievance filings Pierce may have received as the head of SHU. Grievances, however, are insufficient to impute knowledge to a defendant. Brookins v. Williams, 402 F. Supp. 2d 508, 512 (D. Del. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988)

There is no genuine issue of material fact. Defendants former Commissioner Taylor, former Warden Carroll, and Pierce cannot be held liable on the basis of their supervisory position. Moreover, the record does not support, and a reasonable jury could not find, that these Defendants were aware of Plaintiff's allegations and remained "deliberately indifferent" to his plight. Sample v. Diecks, 885 F.2d at 1118. Accordingly, the

Court will grant the Motion For Summary Judgment on the basis of respondeat superior.

### 2. Personal Involvement

Defendants Kromka and Engrem contend summary judgment is proper because they had no personal involvement in Plaintiff's allegations, and no causal link was established, or even alleged, between any conduct of Kromka and Engrem and the allegations of failure to protect. Plaintiff testified during his deposition that he named Kromka as a defendant for "failure to protect and other various constitutional violations", but provided no facts to support this statement. Plaintiff could not remember what actions Engrem took to violate Plaintiff's civil rights, but testified that Engrem had knowledge of the incidents because Plaintiff submitted documents to Engrem for photocopying.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). After reviewing the record, the Court finds that Engrem and Kromka have demonstrated an absence of material fact, and there is insufficient evidence to enable a jury to reasonably find for Plaintiff on the issue of whether Kromka and Engrem had any personal involvement in the alleged constitutional violations.

Therefore, the Court will grant the Motion For Summary Judgment on the issue of personal involvement.

### C. Failure To Protect

Defendants move for summary judgment on the basis that Plaintiff was not incarcerated under conditions that posed a substantial risk of serious harm and Defendants did not know of, and disregard, an excessive risk to Plaintiff's safety. To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); see also Griffin v. DeRosa, 153 Fed. Appx. 851, 2005 WL 2891102 (3d Cir. 2005).

Initially, the Court notes that there is no evidence before the Court of a "no contact" order with regard to Plaintiff and Ashley or Plaintiff and Thomas. It seems that Plaintiff may be referring to the an order in a Thomas criminal case, but Plaintiff's name is nowhere to be found in the order. Notably, other than one grievance Plaintiff submitted in March 2005 regarding the throwing of urine, feces, and food by Thomas, prison records do not reflect any altercation or physical contact

between Plaintiff and Thomas or Ashley. Moreover, the record does not support Plaintiff's position that, prior to the filing of the Complaint, Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety.

There is nothing in the record to support a finding that Plaintiff had any contact with Ashley. At the most, they were housed in the same unit, but in separate cells. On one occasion they were to be transported together for a dental visit, but Plaintiff complained and the trip did not take place.

As to Thomas, Plaintiff testified that he told Seacord that he was to have no contact with Thomas. His testimony, however, is that he made the statement to Seacord on September 7, 2005, more than six months after Plaintiff filed his Complaint. While they were celled next to each other for a period of time, the record does not support a finding that there was any physical contact between the two. Notably, Plaintiff testified that he had no independent recollection of contact with Thomas.

Granted, Plaintiff testified during his deposition that during an eight month period, approximately fifty times, Thomas would sling or throw urine, feces, and food through the food flap/slot into Plaintiff's cell. Yet nothing in the record supports a finding that any Defendant was aware that Thomas was throwing anything at, or through, Plaintiff's food flap/slot. Plaintiff recalled filing grievances, but could not recall

-15-

specifics, and the record reflects that Plaintiff submitted only one grievance complaining about Thomas throwing urine, feces, and food at his food flap. Plaintiff signed his Complaint on February 10, 2005, and it is postmarked February 26, 2005. Hence, the only grievance in the record to supports Plaintiff's position that might suggest Defendants were aware that Thomas was a risk to Plaintiff was submitted for an incident that occurred on March 2, 2005, some three weeks after Plaintiff signed his Complaint. Even then, the grievance does not indicate that any of the substances thrown at Plaintiff landed inside his cell. Rather, Plaintiff complains that the substances were thrown at his food flap.

The record does not support, and a reasonable jury could not find, that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm and that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety Accordingly, the Court will grant the Motion For Summary Judgment on the failure to protect issue.[6]

---

[6] The Court will not address the issues of failure to exhaust administrative remedies and immunity inasmuch as Defendants are entitled to summary judgment on other grounds. The Court also will not address the issue that Plaintiff did not suffer any physical injury, but notes that Defendants' position is well-taken as nothing in the record indicates that Plaintiff sustained any injury.

**V.   CONCLUSION**

    The Court will grant Defendants' Motion For Summary Judgment.  (D.I. 46.)  An appropriate Order will be entered.